UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KEVIN M. TROTMAN,

                Plaintiff,

    - against -

WCBS-AM dba/CBS RADIO-INFINITY
BROADCASTING, INC.,

                Defendant.

Case No. 06-Civ-3389 (FM)

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**KAUFF McCLAIN & McGUIRE LLP**
Laura Sack (LS 5501)
Roy P. Salins (RS 0793)
950 Third Avenue, 14th Floor
New York, New York 10022
(212) 644-1010
Attorneys for Defendant

154461.v1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.    Trotman's Rule 56.1 Counterstatement Must be Disregarded .......................................... 1

II.   Trotman Has Failed to Identify Any Genuine
      Issues of Material Fact .................................................................................................. 1

III.  Trotman Has Not Alleged Any Discriminatory Conduct
      Occurring Within the 300-Day Limitations Period ...................................................... 2

IV.   Trotman's Compensation Comparisons Are Inapt and
      Must be Disregarded ..................................................................................................... 3

V.    Trotman is Not Similarly Situated to Killeen or Tacinelli ............................................ 4

VI.   Trotman Has Proffered No Evidence of Discriminatory Animus ................................. 5

VII.  Trotman Fails to Show that CBS Radio's Legitimate,
      Non-Discriminatory Reasons For its Assignment of
      Orphaned Accounts Were Pretext For Race Discrimination ........................................ 7

CONCLUSION .................................................................................................................... 10

## TABLE OF AUTHORITIES

### FEDERAL CASES

Page

Budde v. H&K Distrib. Co., No. 99-9449,
   2000 U.S. App. LEXIS 15811 (2d Cir. June 29, 2000) ..................................................8

Gadsden v. Jones Lang Lasalle Americas, Inc.,
   210 F. Supp. 2d 430 (S.D.N.Y. 2002) ............................................................................1

Graham v. Long Island R.R., 230 F.3d 34 (2d Cir. 2000) .......................................................4

Jackson v. Citiwide Corp. Trans., Inc., No. 02 Civ. 1323,
   2004 U.S. Dist. LEXIS 2279 (S.D.N.Y. Feb. 17, 2004) .................................................8

Ledbetter v. Goodyear Tire & Rubber Co, No. 05-1074,
   2007 U.S. LEXIS 6295 (May 29, 2007) .....................................................................2, 6

Loucar v. Boston Market Corp., 294 F. Supp. 2d 472 (S.D.N.Y. 2003) ...............................5

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) ..............................................2, 6

Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133 (2000) .........................................10

Scaria v. Rubin, 117 F.3d 652 (2d Cir. 1997) ..........................................................................3

Simpson v. Metro-North Commuter R.R., No. 04 Civ. 2565,
   2006 U.S. Dist. LEXIS 50331 (S.D.N.Y. July 20, 2006) ............................................4, 5

DeJesus v. Starr Technical Risks Agency, Inc., No. 03 Civ. 1298, 2004 U.S. Dist.
   LEXIS 19213 (S.D.N.Y. Sep. 23, 2004) .................................................................4, 5, 7

Walker v. Dalton, 94 F. Supp. 2d 8 (D.D.C. 2000) .................................................................6

Wright v. Goldman, Sachs & Co., No. 00 Civ. 6889,
   2004 U.S. Dist. LEXIS 22523 (S.D.N.Y. Oct. 21, 2004) ...............................................5

### STATUTES

Fed. R. Civ. P. 56(e) ................................................................................................................1

I.      **Trotman's Rule 56.1 Counterstatement Must be Disregarded**

This Court's Local Rule 56.1(d) provides that, "[e]ach statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." Plaintiff Kevin Trotman's "Counterstatement Pursuant to Local Rule 56.1" (the "Counterstatement") does not comply with Local Rule 56.1 because it denies indisputable facts without citation to record evidence. Accordingly, those improper portions of the Counterstatement must not be considered by the Court, and the corresponding facts set forth in Defendant CBS Radio Inc.'s ("CBS Radio") Rule 56.1 Statement ("56.1") should be deemed admitted.[1]

II.     **Trotman Has Failed to Identify Any Genuine Issues of Material Fact**

CBS Radio's motion for summary judgment must be granted because there are no genuine issues of material fact. This case boils down to Trotman's claim that management at WCBS-AM NewsRadio 880 (the "Station") assigned Orphaned Accounts on the basis of race. This claim cannot survive summary judgment, however, because it is undisputed that: (i) Chad Lopez (Trotman's manager in 2004 and 2005) assigned those accounts based on the Retail Sales Executive's ("RSE") prior sales performance, reliability, trustworthiness and dependability; and (ii) Lopez believed Trotman "had a 'sales problem' because he did not show up for work, which affected his sales numbers." (56.1 ¶¶ 52, 57). Other undisputed facts confirm that Trotman was not discriminated against on the basis of his race. For example:

---

[1] See Declaration of Laura Sack, dated June 22, 2007 ("Sack Decl. II"), at ¶¶ 2-10. Furthermore, several factual assertions within Trotman's Opposition Brief ("Opp. Br.") are not included in the Counterstatement and/or are not supported by the citations to the factual record. (Sack Decl. II at ¶¶ 11-17). See, e.g., Gadsden v. Jones Lang Lasalle Americas, Inc., 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002) ("Courts in this circuit have not hesitated to deem admitted the facts in a movant's [56.1] statement that have not been controverted by a [56.1] statement from the nonmoving party.").

- Clients complained that Trotman was inattentive. (56.1 ¶ 58).

- Trotman received verbal warnings, a written warning, and a final written warning for absenteeism and non-responsiveness in 2003. (56.1 ¶¶ 18-31, 33, 37-40).

- Lopez spoke to Trotman about his attendance problems in 2004. (56.1 ¶¶ 48-49).

- In January 2005, Station management reassigned a "lucrative" account to Trotman after he complained that he did not have enough accounts. (56.1 ¶¶ 70-72).[2] Station management had previously assigned at least five other accounts to Trotman. (56.1 ¶¶ 110, 112).

- Prior to his termination, Trotman never told anyone at the Station or at CBS Radio that he believed he was the victim of race discrimination. (56.1 ¶ 119).

- Neither Lopez nor Swenson ever said anything to Trotman to suggest that they had any racial bias, and Trotman never heard that Lopez or Swenson had ever made comments suggesting any such bias. (56.1 ¶ 120).

### III. Trotman Has Not Alleged Any Discriminatory Conduct Occurring Within the 300-Day Limitations Period

Trotman's Complaint must be dismissed because he has not pointed to any allegedly discriminatory acts which occurred on or after September 1, 2004 (i.e., 300 days before he filed his EEOC charge on June 28, 2005).[3] See Ledbetter v. Goodyear Tire & Rubber Co, No. 05-1074, 2007 U.S. LEXIS 6295 (May 29, 2007); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). Trotman has not identified even a single instance in which an Orphaned Account (or any other account) was assigned to a white RSE instead of to him during the limitations period.[4] Clearly, under the Supreme Court's recent ruling in Ledbetter, any allegedly discriminatory

---

[2] Although Trotman's lawyers now disingenuously and inaccurately refer to Princeton Longevity as a "token account," Trotman himself previously characterized it in a written submission to the EEOC as "lucrative." (Opp. Br. at 18; 56.1 ¶ 72).

[3] In opposing the motion for summary judgment, Trotman neglected to address CBS Radio's statute of limitations argument. (See Def. Br. at 15 n. 21).

[4] Nor does Trotman allege any other discriminatory conduct during the limitations period.

154461.v1

account assignments which pre-dated September 1, 2004 are not actionable.

IV.   **Trotman's Compensation Comparisons Are Inapt and Must be Disregarded**

Trotman argues that the Station should have assigned more Orphaned Accounts to him than to his white co-workers, Scott Tacinelli and John Killeen, because he had more sales experience.[5] However, sales experience with prior employers had no bearing on the assignment of Orphaned Accounts. While Trotman's prior sales experience got him in the door at CBS Radio, it was his performance at the Station that was relevant thereafter. (Swenson Tr. 14-16; 56.1 ¶¶ 52, 89, 95). Trotman's belief that his experience with prior employers should have entitled him to more Orphaned Accounts is irrelevant, especially because the factors that Station management considered when assigning those accounts were non-discriminatory (based as they were on RSEs' performance at the Station). (See, e.g., 56.1 ¶ 52). Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions.").

---

[5] Trotman overstates this difference in prior sales experience. He states, for example, that Tacinelli had no sales experience before he started at WCBS. (Counterstatement at 6 n. 2). However, Tacinelli holds an undergraduate degree in marketing, whereas Trotman has no college degree. (Tacinelli Tr. 24; Sack Decl. II, Ex. F). Moreover, Tacinelli worked as a Sales Assistant at the Station for a year before he was promoted to RSE. (Tacinelli Tr. 4-5). Trotman further states that Killeen had limited advertising experience. (Counterstatement at 6 n. 3). In reality, Killeen "sold advertising [for his college newspaper and after graduation] was a government bond salesman, then [he] sold Internet advertising, and then [he] sold radio advertising." (Killeen Tr. 16). Additionally, in portraying himself as a better and more experienced salesperson than Killeen and Tacinelli, Trotman ignores his own checkered employment history. In fact, although he did not disclose this fact to CBS Radio on his job application, Trotman was fired from his immediately preceding job at Yellow Book due to unsatisfactory sales performance. (Pl. Tr. 10; Sack Decl. II, Ex. F). And Pitney Bowes "probably" fired Trotman for "sales performance" in 1989 (again, before he worked for CBS Radio). (Pl. Tr. 37; Sack Decl. II, Ex. F).

154461.v1

Trotman's argument that the compensation comparison should be viewed according to years of experience at the Station and not calendar year is both novel and unavailing.[6] Most significantly, Trotman's method does not take into account a multitude of obvious factors affecting compensation from year to year, such as the costs of advertising in different years and inflation. And tellingly, Trotman cites no legal authority to support the proposition that his method is supposedly the proper one.

### V.   Trotman is Not Similarly Situated to Killeen or Tacinelli

Because Trotman alone exhibited serious performance deficiencies related to absenteeism and non-responsiveness to clients, he was not "similarly situated" to Killeen or Tacinelli,[7] and he cannot establish a *prima facie* case of pay disparity under Title VII. See Simpson v. Metro-North Commuter R.R., No. 04 Civ. 2565, 2006 U.S. Dist. LEXIS 50331, at *24 (S.D.N.Y. July 20, 2006); DeJesus v. Starr Technical Risks Agency, Inc., No. 03 Civ. 1298, 2004 U.S. Dist. LEXIS 19213, at *29 (S.D.N.Y. Sep. 23, 2004).

Trotman cites Graham v. Long Island R.R., 230 F.3d 34 (2d Cir. 2000), for the proposition that "whether employees are similarly situated is usually a question of fact for the jury." (Opp. Br. at 10). The Graham case, however, was a discriminatory discharge case, employing a different *prima facie* standard. Moreover, Trotman ignores the fact that both Simpson and DeJesus were decided after Graham and both granted summary judgment to the

---

[6] Trotman's request for Killeen's 2006 tax returns is without merit. First, the Court has already denied this request; second, Trotman's attorney failed to ask Killeen at his deposition the amount that he earned in 2006 (although counsel did ask the amount that Killeen earned in 2003-2005). (Killeen Tr. 23). Counsel's seeming inadvertence should not be rewarded by the Court.

[7] It is undisputed that Killeen and Tacinelli were never disciplined for non-responsiveness or absenteeism, and that Trotman is unaware of either Killeen or Tacinelli ever being AWOL during their employment. (56.1 ¶¶ 121-22).

employer on the grounds that, *inter alia*, the plaintiff was not "similarly situated" to the alleged comparators. Simpson, 2006 U.S. Dist. LEXIS 50331, at *25; DeJesus, 2004 U.S. Dist. LEXIS 19213, at *30-31. The same result is appropriate here.

VI. **Trotman Has Proffered No Evidence of Discriminatory Animus**

The undisputed facts clearly show that CBS Radio did not act with any discriminatory animus towards Trotman. Indeed, Trotman does not dispute that the factors which Lopez considered when he assigned Orphaned Accounts were "prior sales performance, reliability, trustworthiness and dependability." (56.1 ¶ 52). It is further undisputed that:[8]

- Rather than firing Trotman in December 2003 for repeated and protracted episodes of no call, no show, and no contact whatsoever, Station management elected to "give him an opportunity to turn it around." (56.1 ¶ 38).

- Rather than firing Trotman on April 1, 2005, CBS Radio gave him more than a week to respond to Murphy's daily calls and messages to him. Trotman was discharged after seven days of utter silence from him, and after the police assured Station management that Trotman was at home. (56.1 ¶¶ 79-87).

- Neither Lopez nor Swenson ever said anything to Trotman to suggest that they had any racial bias, and Trotman never heard that Lopez or Swenson had ever made any comments suggesting any such bias. (56.1 ¶ 120).

- Bill McGee, another black RSE at the Station, was assigned the Station's largest agency account, as well as another large account. (56.1 ¶ 115).

In the face of this overwhelming evidence of race neutrality, Trotman baldly asserts that he has set forth evidence of discriminatory animus: (i) through CBS Radio's allegedly

---

[8] Although Trotman's brief suggests that certain facts are disputed (see Opp. Br. at 12 n. 11), his response to CBS Radio's 56.1 Statement shows otherwise. Unsupported, generalized denials will not suffice to avoid summary judgment. Wright v. Goldman, Sachs & Co., No. 00 Civ. 6889, 2004 U.S. Dist. LEXIS 22523, at *3-4 (S.D.N.Y. Oct. 21, 2004) (Maas, M.J.) (citing Loucar v. Boston Market Corp., 294 F. Supp. 2d 472, 478 (S.D.N.Y. 2003) (plaintiff's "unsupported, conclusory assertions and denials" cannot refute defendant's "properly-supported statements of material fact . . .")).

154461.V1

discriminatory hiring practices;[9] (ii) because African-Americans allegedly were not given as many accounts as white RSEs at the commencement of their employment; and (iii) through the circumstances of his discharge. (Opp. Br. at 13). Each of these allegations is legally insufficient to establish discriminatory animus and is factually unsupported by the record.

First, this is not a failure to hire case,[10] and "[i]nformation about the composition of the workforce during the relevant time period . . . is not enough to establish pretext where . . . the facts of the specific case do not themselves lend any support to an inference of discrimination." Walker v. Dalton, 94 F. Supp. 2d 8, 15 (D.D.C. 2000).

Second, Trotman's claim that newly-hired African-Americans were not provided with as many accounts as white RSEs is untimely, since he, Killeen, and Tacinelli were all hired outside of the 300-day limitations period. See Ledbetter, 2007 U.S. LEXIS 6295; Morgan, 536 U.S. 101. Just like the plaintiff in Ledbetter, Trotman claims that decisions made outside the 300-day limitations period have created the purported pay disparity. Consistent with Ledbetter, however, any allegedly discriminatory account assignment that occurred before September 1, 2004 is time-barred. This claim is also factually unsubstantiated.[11] (Sack Decl. II at ¶¶ 2, 11, 13).

---

[9] Trotman does not cite a single case supporting his proposition that allegedly discriminatory hiring practices are evidence of animus in a case like this one, where the sole claim is disparate pay.

[10] There is no evidence in the record that CBS Radio denied employment to any qualified African-American applicants (nor is there any evidence in the record that CBS Radio has ever denied employment to *any* African-American applicant). Nor has Trotman introduced any document describing the racial composition of the Station's workforce or applicant pool; instead, he relies exclusively on the speculative, "rough estimate[s]" that Swenson provided at his deposition. (Swenson Tr. 45-47).

[11] Trotman's claim that he never received the client list referenced in his offer letter (Opp. Br. at 2) is also time-barred under Ledbetter and Morgan. Such claim is also irrelevant, since it is undisputed that Trotman earned $70,000 in 1999 (i.e., $30,000 more than he had been guaranteed in his offer letter). (Trotman Aff. at ¶ 6; Opp. Br. at 3).

154461.v1

Third, Trotman makes the preposterous claim that the circumstances surrounding his termination are evidence of discriminatory animus.[12] It is undisputed that, notwithstanding the verbal warnings, the written warning, the final written warning, and Lopez's counseling about his attendance problems, Trotman was fired (on April 8, 2005) only after he deliberately chose to ignore the messages that Murphy left on his cell and home telephones daily from April 1 through April 6, 2005. (56.1 ¶¶ 77-87).[13]

These purported examples of discriminatory animus are insufficient to state a *prima facie* case of discriminatory pay disparity under Title VII, especially given the avalanche of undisputed facts indicating the complete absence of any such animus.[14]

### VII. Trotman Fails to Show that CBS Radio's Legitimate, Non-Discriminatory Reasons For Its Assignment of Orphaned Accounts Were Pretext For Race Discrimination

Trotman would have been assigned more Orphaned Accounts had he not exhibited habitual unexcused absenteeism and had he been more responsive to clients. Indeed, Trotman admits, *inter alia*, that: (i) clients complained that he was inattentive; (ii) he received verbal

---

[12] The fact that Trotman's termination letter was prepared by Human Resources (to effectuate a decision made by Swenson and others) is evidence of an ordinary and appropriate division of labor between various functional areas in a corporation. Trotman's suggestion that it is evidence of discrimination is ludicrous. (See Opp. Br. at 8).

[13] Trotman's behavior was textbook job abandonment, and CBS Radio was obviously justified in discharging him. Indeed, Trotman admits that he is not challenging his discharge in this action. (56.1 ¶ 88). Further, Trotman's contention that he was "suddenly" terminated is beyond disingenuous. (Opp. Br. at 13). Trotman was terminated only after he deliberately ignored his supervisor's phone calls and messages for six straight days, after having previously been warned that such misconduct would result in his immediate termination. (56.1 ¶¶ 40, 82-87). His termination was the antithesis of sudden.

[14] Trotman attempts to distinguish the cases that CBS Radio has cited with the conclusory assertion that he has provided a greater quantity and quality of evidence of discrimination than the plaintiffs in those cases. He offers no support for those bald assertions. (Opp. Br. 13-14). Also, Trotman's challenge to the applicability of DeJesus is unavailing because he focused solely on the "similarly situated" prong of the *prima facie* case and ignored the fact that the court granted summary judgment in large part because there was no evidence of racial animus. See DeJesus, 2004 U.S. Dist. LEXIS 19213, at *32-35.

154461.v1

warnings, a written warning and a final written warning for absenteeism and non-responsiveness in 2003; (iii) his supervisor spoke to him in 2004 about his attendance problems; and (iv) Lopez assigned Orphaned Accounts on the basis of RSEs' prior sales performance, reliability, trustworthiness and dependability. (56.1 ¶¶ 18-31, 33, 37-40, 48-49, 51-54, 57-59, 77-87).[15]

Trotman attempts to minimize the impact of these undisputed and dispositive facts by stating, "many of the complaints against [him] were false and/or overblown by clients", "were perceived issues", were "much to do about nothing" and were "rarely legitimate."[16] (Counterstatement ¶¶ 57-59; Opp. Br. at 4, 15). However, there is no evidence to suggest that Station management viewed client complaints about white RSEs any differently than they viewed such complaints about Trotman. Indeed, CBS Radio is certainly entitled to take advertiser complaints seriously, even if Trotman does not. See Budde v. H&K Distrib. Co., No. 99-9449, 2000 U.S. App. LEXIS 15811, at *3-5 (2d Cir. June 29, 2000) (affirming summary judgment on the grounds that the numerous customer complaints against plaintiff created a legitimate, non-discriminatory reason for the employer's decisions regarding plaintiff); Jackson v. Citiwide Corp. Trans., Inc., No. 02 Civ. 1323, 2004 U.S. Dist. LEXIS 2279, at *9-11 (S.D.N.Y. Feb. 17, 2004) (granting summary judgment in favor of employer that terminated plaintiff after a customer complained about her rudeness). In a client-driven business such as CBS Radio's, in which "it's very difficult to hang onto the accounts," Station management could

---

[15] While Trotman may have found two individuals to vouch for him, it is undisputed that other clients viewed his servicing of their accounts less favorably. (See Kufeld Aff. at ¶¶ 3-8; Genovese Aff. at ¶¶ 2-3; 56.1 ¶¶ 58-59). It should be noted, too, that both the DOL and Weitz and Luxenberg stopped purchasing advertising through Trotman in or about November and December 2004, respectively. (Sack Decl. II, Ex. G).

[16] In fact, Trotman was so cavalier about client complaints that he described them as a "verbal annoyance, maybe ... something that could be used as a bargaining tool." (Opp. Br. at 5; Pl. Tr. 150).

ill afford to blithely dismiss client complaints as "much to do about nothing." (Pl. Tr. 61-62).

Trotman's contention that CBS Radio has "hand-picked" and "magnified" the incidents that called into question his lack of responsiveness and reliability is spurious. (Opp. Br. at 15). In fact, it is undisputed that Trotman went AWOL twice in 2003, for a total of 11 days (56.1 ¶¶ 20-31, 33, 39);[17] no magnification is necessary to underscore the seriousness of those offenses.

Trotman's argument that he was placed under greater scrutiny for his attendance and client contacts than any of his white co-workers misstates the record. (Opp. Br. at 15; Sack Decl. II at ¶ 17). Trotman claims that Killeen and Tacinelli were not subjected to written warnings or termination when they were reprimanded. (Opp. Br. 15). Trotman admits, however, that he is unaware of any instances in which Killeen or Tacinelli went AWOL, and there is no evidence in the record that (unlike Trotman) either Killeen or Tacinelli ever had problems with responsiveness or absenteeism. (See, e.g., 56.1 ¶¶ 121-22). Moreover, just as Tacinelli had received a verbal warning in September 2001 for his sales performance, Murphy merely counseled Trotman (without issuing a written warning) when she discussed with him his lackluster sales performance in January 2005. (56.1 ¶¶ 73, 75).

---

[17] Trotman claims that these absences were necessary and that he submitted medical documentation. (Counterstatement ¶¶ 15, 17, 19, 34). However, he did not put the alleged medical documentation into evidence. More to the point, even if this medical documentation exists, Trotman does not dispute that he failed to contact his supervisor in October or December 2003 to inform her of his alleged medical condition and that he would be absent, or to respond to her numerous inquiries about his status and plans to return to work. (56.1 ¶¶ 20-31, 33, 37-40). Trotman's *post hoc* excuses do not absolve him of responsibility for being AWOL in October 2003 and then for another ten days in December 2003. (Id.). Furthermore, Trotman cannot even recall where he was during his protracted December 2003 absence, or why he was absent, nor can he explain why no one contacted the Station on his behalf during that ten-day absence. (Pl. Tr. 267-70). Finally, Trotman has not introduced any evidence (because none exists) that he contested either of the warning letters when he received them. Surely, if either warning letter was inaccurate because it did not include a discussion of his alleged medical problems, Trotman would have addressed that issue at the time.

Even assuming, *arguendo,* that Trotman established a *prima facie* case of discrimination (which he did not), CBS Radio articulated a legitimate, nondiscriminatory reason for the allegedly adverse employment actions, requiring that the Court grant its motion for summary judgment unless Trotman proved, by a preponderance of the evidence, that CBS Radio's "proffered reasons are mere pretext for discrimination" and that CBS Radio was "motivated by a discriminatory purpose." Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 143 (2000) ("Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory"). Trotman cannot establish that CBS Radio's legitimate, non-discriminatory reasons for its decisions related to Trotman were a pretext for discrimination. As discussed above, Trotman's assertion that the racial composition of the Station, the Station's assignment of accounts to RSEs at hire or thereafter, and the circumstances of his termination are evidence of pretext is wholly without merit.

## **CONCLUSION**

Trotman had five months to conduct discovery in this case. He took five depositions and obtained 2,490 pages of documents during the course of discovery. Still, he can point to no evidence to support his race discrimination claim – because there was no race discrimination here. Trotman's compensation was adversely impacted not by his race, but by his unprofessional conduct. It is hardly surprising that a salesperson who abandoned his clients and his job responsibilities repeatedly and for days on end was somewhat less successful than his more reliable and responsive peers.

154461.v1

For the reasons stated in CBS Radio's moving brief, as well as this reply memorandum, summary judgment should be entered in favor of CBS Radio.

Dated: New York, New York
June 21, 2007

KAUFF McCLAIN & McGUIRE LLP

By: *Laura Sack*
Laura Sack (LS 5501)
Roy P. Salins (RS 0793)
950 Third Avenue, 14th Floor
New York, New York 10022
(212) 644-1010
Attorneys for Defendant

154461.v1